Florence S. YOUNG,
Plaintiff-Appellant-Respondent,

v.

MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION,
Defendant-Appellant-Respondent.

Nos. 37992, 37993.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 26, 1977.

Motion for Rehearing or Transfer
Denied June 9, 1977.

Wion, Burke & Boll, Edward P. Burke, Clayton, for plaintiff-appellant-respondent.

W. David Wells, St. Louis, for defendant-appellant-respondent.

McMILLIAN, Presiding Judge.

This is an appeal whereby plaintiff, in a conversion action, sought actual and punitive damages against defendant bank for its appropriation of $10.00 which plaintiff had on deposit with the bank. The trial court directed a verdict for defendant on the issue of punitive damages. A jury awarded $1500.00 to plaintiff as actual damages. Defendant contends that the $1500.00 award was unsupported by probative evidence and that damages as a matter of law are limited to the $10.00 appropriated. Plaintiff alleges trial court error in refusing to submit the issue of punitive damages to the jury. We find plaintiff's proven actual damages to be only $10.00 and, therefore, order the entry of a judgment for plaintiff for that amount plus interest. In addition,

we find that the trial court erred in directing a verdict for defendant on the issue of punitive damages and accordingly remand for a new trial on the issue of punitive damages only.

The facts are relatively simple. On January 21, 1971, plaintiff withdrew $193.00 from her savings account, leaving a balance of $10.00. Plaintiff also cashed two U.S. Savings Bonds, a $25.00 bond worth $18.75 and a $50.00 bond worth $38.10. Plaintiff testified that she immediately counted the money received for the savings bonds and it totaled $56.85. She took this money, the $193.00 withdrawn from her savings account plus some other money, and opened a checking account for $260.00. Plaintiff then wrote a check for $250.00 leaving a balance, after assessment of the service charge, of $9.90. At the end of the day, the teller who handled plaintiff's transactions discovered that she was $18.75 short. In rechecking, the teller noticed that a $37.50 cash value was stamped on the face of plaintiff's $25.00 bond. Feeling that this was the source of the shortage, the teller called plaintiff and asked her to remit the $18.75 overpayment. Plaintiff denied that there had been an overpayment and asked if there was some other bank employee with whom she could discuss the matter. The teller told plaintiff that she could call the auditing department. Plaintiff did not do so at this time.

On January 28, 1971, the bank sent plaintiff a letter informing her that because she had refused to repay the $18.75, the bank was charging her savings account $10.00, thereby closing it. The letter also demanded repayment of the $8.75 allegedly still owing. Finally, plaintiff was requested to make other arrangements for her checking account and was informed that a check for the balance in the checking account would be mailed to her. This time plaintiff attempted to call the bank president but was referred to the bank's auditing department. Plaintiff was unable to obtain any satisfaction.

On February 9, 1971, plaintiff received a second letter from the bank in which was enclosed a cashier's check for $9.90, the balance of the checking account. Once again, plaintiff was informed that she owed the bank $8.75.

Plaintiff's petition alleged that the bank had acted maliciously and intentionally and had thereby ". . . caused plaintiff's reputation to suffer substantially in the economic community; to-wit, she can no longer obtain credit, and she is embarrassed by refusals of credit by merchants." Punitive damages in the amount of $100,000 and $10,000 in actual damages were sought. Plaintiff's case at trial consisted solely of her own testimony recounting the events and that she was very upset and angry with the bank. The only testimony supportive of her claims of economic embarrassment was the following exchange:

"A. . . . I felt after I applied for credit some place, I felt because of that transaction, it damaged my character as a person.

"Q. Did you know that happened, or is that something you are—

"A. I don't know if it's a fact, but I feel it was."

The bank's case at trial consisted solely of the teller's recounting of the events. The teller knew nothing about the transactions between plaintiff and the bank subsequent to the teller's January 21 telephone call to plaintiff. No evidence was introduced by defendant to establish any legal authority for the bank's actions. Plaintiff's exhibit I, the January 28 letter, did recite, without any detail, that the bank was ". . . [a]cting upon the instructions of our auditing department and on the advice of our attorney. . . ."

The overall issue of this case is the proper measure of recoverable damages. The jury found that the bank's appropriation of the $10.00 was a conversion, that is, "an unauthorized assumption and exercise of the right of ownership over the personal property of another to the exclusion of the owner's right. . . ." *Wirth v. Heavey,* 508 S.W.2d 263, 267 (Mo.App.1974). "General damages" recoverable for a conversion are the value of the property converted,

$10.00 plus interest, *see* cases collected at Mo. Digest, Trover and Conversion, ⊜⇒44. In addition to this amount, plaintiff might recover "special damages" for the "natural, but not necessary, result of the wrongful act. . . ." *Condos v. Associated Transports, Inc.*, 453 S.W.2d 682, 688 (Mo. App.1970); 89 C.J.S. Trover and Conversion § 170. Usually, special damages must be specifically pled, § 509.200, V.A.M.S. In the present case, the only special damages specifically alleged in plaintiff's petition were detriment to her reputation in the economic community. The only testimony relevant to this claimed injury was plaintiff's statement that she "felt [that] because of that transaction, it damages my character as a person." No evidence of refusals of credit or specific actions of the bank that might harm plaintiff's credit rating was introduced. Any award of damages for the claimed injury to economic reputation in this context was totally unwarranted because plaintiff simply failed to shoulder the burden of proof to demonstrate injury, *Homeyer v. Wyandotte Chemical Corp.*, 421 S.W.2d 306, 310 (Mo.1967).

▪ Although plaintiff pled no other special damages, plaintiff might still recover for other special damages if proven at trial without objection by the defendant, *Mellor v. Missouri Pac. Ry. Co.*, 102 Mo. 270, 14 S.W. 758, 760 (Mo.1890) aff'd. 105 Mo. 455, 16 S.W. 849 (Mo.1891); 22 Am.Jur.2d, Damages, § 273; *cf. Condos v. Associated Transports, Inc.*, supra at 690 (purpose of the special damages pleading rule is to prevent surprise). In the present case, plaintiff did testify, without objection by defendant, that she was angry, upset and embarrassed by the bank's actions. On this appeal, plaintiff attempts to characterize these complaints as evidence of her severe emotional distress, *see generally* Restatement Second, Torts, §§ 46, 47. We recognize that mental anguish may be an injury compensable as special damages in a conversion action, 89 C.J.S. Trover and Conversion § 177. Without deciding whether plaintiff's claims of being upset, angry and embarrassed rise to the level of severe emotional distress, *see generally* Restatement,

Torts, Second, § 46 Comment d, we hold that any award of damages for these claimed injuries of plaintiff's is unsupportable because they are entirely too speculative, *see Warner v. Southwestern Bell Telephone Co.*, 428 S.W.2d 596, 604 (Mo.1968). There was, therefore, no justifiable basis for the jury's award of $1500.00 as actual damages. The only compensatory damage proven was the $10.00 actually appropriated.

▪ On the issue of punitive damages, however, we find that the trial judge erred in removing this issue from the jury's consideration by a directed verdict. In reviewing the trial court's direction of a verdict, we must determine whether, by construing all of the evidence and inferences therefrom favorably to plaintiff, a submissible case was made, *Boyle v. Colonial Life Ins. Co. of America*, 525 S.W.2d 811 (Mo.App.1975). To justify submission of the punitive damages issue to the jury, plaintiff must first prove entitlement to actual damages, *Coonis v. Rogers*, 429 S.W.2d 709 (Mo.1968). In the present case, plaintiff proved actual damages of $10.00.

▪ Beyond proof of actual damage, the basis for an award of punitive damages is proof of malice in the sense that defendant is shown to have done a wrongful act intentionally and without just cause or excuse, *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719, 722 (Mo.1966). The evil intent which justifies punitive damages " . . . may be implied from reckless disregard of another's rights and interests. . . ." *id.* at 723; *Pashalian v. Big-4 Chev. Co.*, 348 S.W.2d 628, 637 (Mo.App. 1961). A demonstration of a simple good faith mistake or ignorance as to the wrongfulness of the act constitutes a defense to the award of punitive damages, *see e. g., McClellan v. Highland Sales & Inv. Co.*, 484 S.W.2d 239, 242 (Mo.1972); *Price v. Ford Motor Credit Co.*, 530 S.W.2d 249, 253–54 (Mo.App.1975); *Walker v. Huddleston*, 261 S.W.2d 502 (Mo.App.1953).

▪ Application of these general principles to the facts of the present case requires

reversal of the trial court's direction of a verdict. By submitting the issue of actual damages to the jury, the trial judge indicated his determination that there was sufficient evidence to support a finding that the bank's appropriation of the $10.00 was a wrongful, unauthorized act. As to the bank's awareness of the wrongfulness of its act, the bank advances two explanations. First, it is contended that the bank was entitled to rely on the statements of its teller that an overpayment had been made. This argument misses the issue. Construing all of the evidence in the light most favorable to plaintiff precludes us from finding that an overpayment was made. More importantly, even if an overpayment were made, that fact offers no justification for the bank's forced settlement of the disputed claim by appropriation of plaintiff's savings account. It is the bank's self-help approach that constitutes the intentional, wrongful act justifying punitive damages. Secondly, the bank contends that it did not know its act was wrongful because it acted on the advice of its legal and auditing departments. This contention is based solely on statements in the bank's January 28 letter to plaintiff that these departments had been consulted. This self-serving statement in the letter was not supported, however, because the bank did not call as a witness, any member of the legal or auditing departments. The mere statement in the letter cannot be considered as competent evidence to support a defense of a good faith mistake. Finally, we note that the bank has never attempted to offer plaintiff, or this court, any citation to legal authorization for its actions. Our review of the record in this case, therefore, discloses no basis for the trial court's direction of a verdict on the issue of punitive damages.

We, therefore, remand this cause to the trial court with directions to enter a judgment for plaintiff for $10.00 plus interest and to hold such judgment in abeyance; to conduct a new trial on the issue of punitive damages. If on retrial punitive damages are found to be justified, an aggregate judgment for the amount of the punitive damages plus the $10.00, plus interest, should then be entered.

Judgment affirmed in part and reversed and remanded with directions.

STEWART and REINHARD, JJ., concur.