MURDOCK, Judge,
concurring in the result in part and dissenting in part.
I concur in the result with respect to that portion of the main opinion concluding that the trial court erred in excluding the testimony of Gomez and Delmore as to the value of their mother’s personal property. I respectfully dissent, however, as to that portion of the main opinion affirming the trial court’s exclusion from Delmore’s and Gomez’s conversion claims of the $17,000 in currency found in their mother’s bedroom.
It is true that, generally, an action will not lie for the conversion of money. As the main opinion notes, however, “ ‘if the money at issue is capable of identification, then a claim of conversion may be appropriate.’ ” 903 So.2d at 145 (quoting Greene County Bd. of Educ. v. Bailey, 586 So.2d 893, 898 (Ala.1991)).
At the time it was found and entrusted to Gonzales for safekeeping, the money at issue in the present case was specific currency — i.e., specific notes found in “purses, shoe boxes and clothes” in the bedroom of Delmore and Gomez’s mother. In contrast, the money at issue in Covington v. Exxon Co., U.S.A., 551 So.2d 935 (Ala.1989), a case upon which the main opinion relies, never took the form of specifically identified notes or coinage, but rather was a general debt from one party to another. As a result, the outcome in Exxon Co. was simply in line with the principle that “a conversion action will not lie when there is merely a relationship of debtor and creditor.” Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384, 1387 (Ala.1994). In contrast to the debt at issue in Exxon Co., the money at issue in the specific case was, in the words of our Supreme Court in Lewis v. Fowler, 479 So.2d 725, 726 (Ala.1985), “ ‘ “specific money capable of identification, e.g., money in a bag or coins or notes which have been entrusted to defendant’s care.” ’ ”
It is true that a conversion does not occur until such time as there is a “wrongful taking or wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another’s property. The gist of the action is the wrongful exercise of dominion over property to the exclusion or in defiance of a plaintiffs rights.” Greene County Bd. of Educ. v. Bailey, 586 So.2d at 898 (emphasis added). Thus, it could be argued that the conversion in this case did not occur at the time the money at issue was commingled with other money and deposited by Gonzales into his account, but only at such subsequent point in time at which he refused to pay over the $17,000 from that account, and that only then did he wrongfully detain and exercise dominion over property which was merely entrusted to him for safekeeping. At that point in time, the object of the conversion would no longer be specific notes or coins. As our Supreme Court explained in Lewis v. Fowler, however:
“The requirement that there by ‘earmarked money or specific money capable of identification’ before there can be a conversion has been complicated as a result of the evolution of our economic system.
“Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a *147 bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited.”
Lewis v. Fowler, 479 So.2d at 726. It has been stated that “[t]he rule is elementary that if a bailee accepts money and places it in a private safe mixed with his own money, or deposits it with his bankers upon his own private account, such treatment of the funds is a conversion, and renders the bailee absolutely liable.” Peltola v. Western Workman’s Publ’g Soc’y, 113 Wash. 283, 289, 193 P. 691, 693 (1920).
Similarly it has been held in Alabama that, where an attorney diverts money placed by a client into the attorney’s trust account, although a “conversion does not ordinarily lie for money represented by a general debt .... the rule is otherwise as to funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion.” Dillard v. Payne, 615 S.W.2d 53, 54 (Mo. 1981). See also Craven v. Wright, 114 Or. 692, 693-94, 236 P. 1043, 1044 (1925) (“Where a check has been given to a person for one purpose and it has been diverted to a purpose different from that from which it was given, an action in trover may be maintained by the maker thereof for the conversion of the money paid thereon.”); Taylor v. Dwyer, 129 Ala. 325, 29 So. 692 (1901) (citing with approval Farrand v. Hurlbut, 7 Minn. 477 (1862)) (holding that a conversion claim could be brought with respect to $436 placed in the hands of the defendant to be loaned or invested by the defendant in the name of the plaintiff, but which the defendant loaned and invested in his own name).
The gravamen of a conversion claim is the wrongful converting of someone else’s property to the defendant’s own use. In the present case, specific money was taken by Gonzales. It was converted into a credit in his bank account. The fact that the specific currency is no longer in Gonzales’s physical possession is not dispositive; the fact is .that there is a credit in Gonzales’s bank account directly traceable to the money at issue. If-we hold that a credit in a bank account directly traceable to moneys rightfully belonging to another party cannot be the object of a conversion merely because other moneys have also been deposited into that account, then we will indeed have made it easy for anyone who converts the money of another to insulate himself or herself from tort liability for conversion.
In Greene County Board of Education v. Bailey, 586 So.2d at 899-900, our Supreme Court reversed a Rule 12(b)(6), Ala. R. Civ. P., dismissal of an action because
“[t]he allegations of the complaint suggested] that the plaintiff may be able to prove that the defendants ... converted to their own use funds that had been specifically deposited in the ‘[Paramount High School] lunchroom account’ to pay for the high school’s breakfast and lunch programs.”
As the Supreme Court explained:
“[T]he evolution of our economic system has resulted in courts’ today being asked more often than not to determine whether money traceable to identified or segregated sources or accounts can be the subject of a conversion action. Although Lewis [v. Fowler, 479 So.2d 725, 726 (Ala.1985),] did not involve money that was traceable to a special account,[2] this Court, citing Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 732 F.2d 859 (11th Cir.1984), recognized that money directly traceable to a special account is sufficiently identifiable to support an action for conversion.
*148 [[Image here]]
Greene County Bd. of Educ., 586 So.2d at 899 (emphasis added).
In light of the foregoing, I respectfully dissent from that portion of the main opinion affirming the trial court’s exclusion from Gomez’s and Delmore’s conversion claims of the $17,000 in currency found in their mother’s bedroom.
THOMPSON, J., concurs.

“2 Lewis involved a debtor-creditor relationship between the plaintiff and the defendant. That relationship formed the alternative basis for this Court’s holding that the plaintiffs conversion action would not lie.”